UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE HOLT, | ) |
|         Plaintiff, | ) No. 12 C 2571 |
| v. | ) Judge Thomas M. Durkin |
| MRS BPO, LLC, | ) |
|         Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**[1]

Michelle Holt claims that MRS BPO, LLC ("MRS") made numerous calls to her with an automated dialing device in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et. seq., and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et. seq. R. 1. Now before the Court is Holt's Motion for Partial Summary Judgment on her TCPA claim, R. 46, as well as MRS's Motion for Partial Summary Judgment on the FDCPA claims. R. 49. For the following reasons, the Court denies both motions.

**BACKGROUND**

MRS is a debt collection business that collects consumer debts and other obligations owed like municipal fines and parking tickets. R. 48-9 ¶¶ 2-4. To collect outstanding debts and contact debtors, MRS uses both the telephone and the mail. *Id.* ¶ 3.

---

[1] The Court's citations are to the documents' Docket numbers, as "R. __."

Holt alleges that in September 2011, MRS began calling her cell phone number to collect a debt or obligation owed "from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes." R. 1 ¶ 9; R. 46-2 ¶ 3. She claims that between September 2011 and January 2012, MRS made the following nineteen calls to her without her consent:

1. September 12, 2011, at 2:03 pm;
2. September 13, 2011, at 7:45 pm;
3. September 19, 2011, at 8:34 am;
4. September 24, 2011, at 8:07 am;
5. October 13, 2011, at 10:46 am;
6. October 19, 2011, at 10:00 am;
7. November 4, 2011, at 4:53 pm;
8. November 8, 2011, at 11:46 am;
9. November 11, 2011, at 6:47 pm;
10. November 16, 2011, at 2:34 pm;
11. November 19, 2011, at 1:39 pm;
12. November 25, 2011, at 1:53 pm;
13. December 5, 2011 at 7:18 pm;
14. January 3, 2012, at 3:26 pm;
15. January 5, 2012, at 4:17 pm;
16. January 9, 2012, at 5:10 pm;
17. January 11, 2012, at 1:27 pm;
18. January 12, 2012, at 3:10 pm; and
19. January 18, 2012, at 2:28 pm.

R. 46-2 ¶¶ 5, 11.[2] After receiving the first two calls, Holt alleges that she spoke to someone at MRS who "told [Holt] that the calls would cease"; yet, they continued. *Id.* ¶ 14. Accordingly, Holt sent a cease and desist letter to MRS on September 14, 2011. *Id.* ¶¶ 6-9; R. 46-2, Exh. 1. MRS received the letter on September 20, 2011. R. 46-2 ¶ 10; R. 46-2, Exh. 2.

---

[2] Only thirteen of the calls are specifically listed in Holt's Complaint. *See* R. 1.

Between September 2011 and December 2011, Holt claims to have kept a handwritten list documenting all the calls made to her phone, including calls she claims were from MRS. R. 48-3; R. 52-1 ¶ 14. Eleven calls on the list are from MRS's phone number. *See* R. 48-3.[3] Holt also claims that her sister Kimberly created a photographic record of the "caller ID screen notifications," R. 46-2 ¶ 13, though Holt "had no knowledge of the pictures' existence until she was questioned about them during her own deposition." R. 52-1 ¶ 9. Holt has produced fifteen photos which are allegedly of the screen of Holt's phone and depict calls from MRS's number. R. 46-2, Exh. 3.

As a result of these alleged calls, on April 9, 2012, Holt filed suit against MRS, contending that MRS violated the FDCPA and the TCPA. R. 1. MRS contends that it has no record of Holt's cell phone number being linked to any collection account in its system or of any calls placed to Holt's cell phone number, either automatically or manually-dialed. R. 52-1 ¶¶ 3-8.

**LEGAL STANDARD**

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment,

---

[3] In MRS's Statement of Additional Facts, MRS said that eleven calls are *not* included in Holt's handwritten list, and Holt responded, "Undisputed." R. 52-1 ¶ 15. Having examined the handwritten list, the Court is confused by Holt's response because eleven calls from MRS's number (877-553-3114) appear to be on the list. *See* R. 48-3.

3

the non-moving party must produce more than a "mere scintilla of evidence," meaning "evidence on which [a] jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The Court considers the entire evidentiary record and "view[s] all facts and draw[s] all inferences in the light most favorable to the non-moving party." *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013); *Egan Marine Corp. v. Great Am. Ins. Co.*, 665 F.3d 800, 811 (7th Cir. 2011). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248.

## ANALYSIS

Counts I, II, and III of Holt's Complaint arise under the FDCPA; MRS contends it is entitled to summary judgment on these Counts. Count IV is under the TCPA, and Holt contends she is entitled to summary judgment on it. The Court will address the Counts under each Act in turn, beginning with Holt's TCPA claim.

### I. TCPA Claim

Congress passed the TCPA "to protect residential telephone subscriber privacy rights by restricting certain commercial solicitation and advertising uses of the telephone and related telecommunications equipment." H. R. No. 102-317, at 6-7 (1991). The TCPA, in relevant part, provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to any telephone

> number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii). Accordingly, to prove a violation of this provision, a plaintiff must establish that: (1) a call was made; (2) the caller used an automatic telephone dialing system; (3) the telephone number called was assigned to a cellular telephone service; and (4) the caller did not have prior express consent of the recipient. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1); *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 905 (N.D. Ill. Mar 21, 2013). Count I alleges a violation of the TCPA for the nineteen calls Holt claims she received between September 12, 2011, and January 18, 2012. Holt contends that she is entitled to summary judgment on her TCPA claim because there is no dispute as to any material fact regarding the elements. The Court disagrees.

The Court need look no farther than the first and third elements—i.e., whether a call was made to a telephone number assigned to a cellular telephone service—to find a question for the trier of fact. Holt stated in her affidavit that MRS placed nineteen calls to her, all of which were without her permission. R. 46-2. Holt argues that her handwritten list, which she claims she updated every time she received a call, R. 48-3, and the screen shots of her cell phone, R. 46-2, Exh. 3, demonstrate that the nineteen calls were indeed made to her. *See* R. 52 at 1-2. The problem for Holt is the alleged calls do not all match up.

MRS directs the Court's attention to the call records for Holt's cell phone number from August 3, 2011, to September 25, 2012, that Sprint Nextel

5

Corporation provided. R. 49-5. Between those dates, the call records only show five calls made from MRS's number to Holt's cell phone number. *See id.* The calls documented in the call records were made on September 12, 2011, at 4:03 pm; September 13, 2011, at 4:45 pm; September 19, 2011, at 8:34 am; September 24, 2011, at 8:07 am; and January 18, 2012, at 2:28 pm. *Id.* The Court has compared Holt's handwritten list and the cell phone screen shots to the Sprint call records. Some of the calls are supported by the screen shots, some are supported by Holt's list, and others by both. However, only two of the alleged calls are documented in all three (the list, the screen shots, and the call records): the call on September 19, 2011, at 8:34 am; and the call on September 24, 2011, at 8:07 am. *See* R. 46-2; R. 49-5.

Holt claims these differences are immaterial because "[a]ll sources of evidence combine to create a cohesive picture of the nineteen calls MRS placed to her cellular telephone." R. 52 at 10. She also directs the Court to the "Key to Understanding CDMA Call Detail Reports, cont.," which describes why a call may not be listed in the Sprint call records:

> On the CDMA network, Sprint maintains Gateway and SWAT (Soft Wireless Access Tandem) networks in areas where there are large Sprint customer populations. These provide the required extra space that helps Sprint maintain all of the calls. When a call moves through a gateway or SWAT cell site information is not retained and is not recoverable.

R. 52-3 at 2. Holt is correct that this may explain the difference between the documented calls in the Sprint call records and the additional calls Holt claims she received from MRS. However, a reasonable jury could also believe, for example, that

6

some of the calls were never made or that the screen shots were taken of someone else's phone. In fact, MRS contends that it could not find any records in its system of manually-dialed or automatically-dialed calls to Holt's number. R. 48-6 ¶ 9; R. 48-7 ¶¶ 2-5; R. 48-9 ¶ 15.

Additionally, all of the calls from MRS to Holt that are listed in the Sprint call records say "Routed_Call" or ""Undetermined" and list the original number dialed as being different than Holt's number. R. 49-5. Holt asserts that this is "just an artifact of the workings of Sprint's cellular network, as it makes use of temporary numbers to connect calls[.]" R. 52. Indeed, the "Key to Understanding CDMA Call Detail Reports, cont." states in part:

> Routed calls come in two main varieties. The first, also known as Temporary Local Directory Number (TLDN). They may be considered to be bridge/router numbers to complete a call. The second is when a call in [sic] not answered, but is routed to voicemail."

R. 52-3 at 2. This would explain why the calls from MRS's number appear as they do on the Sprint call records, especially considering that many of the other documented calls Holt received have the same pattern of entries. *See* R. 49-5; R. 52 at 5-6. But the fact Holt has provided a plausible explanation does not mean it is the only explanation. MRS, again, claims it did not dial any calls to Holt's number, which supports the reasonable inference that the five documented calls to Holt could have been routed to her cell phone through a different number, i.e., the number originally dialed that was not a TLDN. R. 48; R. 48-7 ¶¶ 2-5; 48-9 ¶ 15. Such a situation might not satisfy the first, third, and fourth elements because if

7

the calls were "routed calls," MRS may not have initially dialed a cell phone number or even called a number without consent.

Holt is unable to demonstrate that a reasonable jury could not find in favor of MRS on any of the required elements. As such, summary judgment on her TCPA claim in Count IV is denied.

## II. FDCPA Claims

Holt alleges three claims under the FDCPA. In Count I, Holt alleges that MRS continued to contact her after receiving a letter from Holt requesting that all further communications related to any debt stop, in violation of 15 U.S.C. § 1692c(c). R. 1 ¶ 18. In Count II, Holt alleges that MRS violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of Holt's debt. R. 1 ¶ 20. In Count III, Holt alleges that MRS violated 15 U.S.C. § 1692e(10) by using false representations and deceptive practices in connection with the collection of an alleged debt from Holt. R. 1 ¶ 22. For all three Counts, Holt must establish that MRS was a "debt collector" seeking satisfaction of "debts" from "consumers" when it allegedly made the calls. *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 500 (7th Cir. 2008). MRS contends the Court should grant summary judgment in its favor on these Counts because Holt cannot establish at trial that "any calls allegedly made to the Cellular Telephone Number by MRS were made in furtherance of the collection of a consumer debt." R. 49-1 at 3. The Court does not agree.

A debt under the FDCPA is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Neither party disputes here that MRS collects consumer debts covered by the FDCPA. R. 48-9 ¶ 4. The issue here is whether the alleged calls were made to collect a consumer debt or something that is not covered by the FDCPA, like a municipal fine or parking ticket, which MRS also collects, R. 48-6 ¶ 2. *See Gulley v. Markoff v. Krasny*, 664 F.3d 1073, 1075 (7th Cir. 2011) (explaining that "municipal fines" are not debts under the FDCPA); *Reid v. Am. Traffic Solutions, Inc.*, Nos. 10 C 204 & 10 C 2010, 2010 WL 5289108, at *4-5 (S.D. Ill. Dec. 20, 2010) (concluding that "traffic fines" are not debts under the FDCPA).

MRS contends that Holt cannot prove the alleged calls were made for a "debt" because: (1) Holt admits that she "did not owe a debt to [MRS]" and the calls were "for a person other than [Holt]," R. 46-2 ¶ 7; (2) Holt has not provided the Court with the name of the person/debtor to whom the alleged calls were made, R. 52-1 ¶ 10; (3) as discussed above, the Sprint call records do not list Holt's number as the number dialed (the calls were routed to her number); and (4) MRS did not find any account in its system linked to Holt's cell phone number. R. 49-1 at 5-6. Although these are valid points, summary judgment does not require Holt to prove her claims now; the issue is whether an issue of material fact exists. And in this case, the

Court believes so. As Holt points out, MRS argues in its motion, "[O]ne cannot say for certain that if MRS was attempting to collect a debt here (which MRS obviously denies), it was necessarily a consumer debt." R. 49-1 at 6; *see* 53 at 7. But that simply highlights the fact that the reverse is also true: one cannot say for certain that if MRS was attempting to collect a debt, it was *not* a debt covered under the FDCPA, as MRS agrees that it does collect covered debts. R. 48-9 ¶ 4. William Perkins, MRS's Quality Assurance Manager, specifically stated in his affidavit that MRS "collects *primarily* consumer debt." R. 49-2 ¶ 2 (emphasis added).

Holt's evidence at trial may be limited, as there is no smoking gun or tape recording of the calls allegedly made, *see, e.g.*, R. 48-9 ¶¶ 4, 5, 7, 17; R. 49-2 ¶ 2; but a reasonable jury could find that any alleged calls to MRS were made to collect a covered debt because that is what the company "primarily" collects. As such, MRS is not entitled to summary judgment on the FDCPA claims in Counts I, II, and III.

## CONCLUSION

For the foregoing reasons, Holt's Partial Motion for Summary Judgment, R. 46, and MRS's Partial Motion for Summary Judgment, R. 49, are both denied. The parties should be prepared to discuss a trial date at the status hearing on October 29, 2013, at 9:00 am.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: October 21, 2013