UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CASE NO. 1:12-cv-02571

MICHELLE HOLT,

    Plaintiff,

v.

MRS BPO, L.L.C.,

    Defendant.
_____/

**PLAINTIFF'S MOTION UNDER RULE 37 FOR DEFAULT JUDGMENT,
OR, IN THE ALTERNATIVE, TO DEEM CERTAIN FACTS AS TRUE**

Plaintiff Michelle Holt ("Plaintiff"), by and through her attorneys, submits this motion pursuant to Rule 37(d) for default judgment, or, in the alternative, to deem certain facts as true.

**Introduction**

Plaintiff moves the Court for default judgment against Defendant MRS BPO, L.L.C. ("MRS") as a sanction for withholding numerous documents it received from Sprint in response to its subpoenas. MRS has twice withheld documents in violation of Rule 37—once in October 2012, and, again, in December 2012—that would have explained crucial discrepancies in Plaintiff's cell phone records. MRS relied on these discrepancies in opposing Plaintiff's motion for summary judgment on her TCPA claims. Throughout this case, MRS has engaged in a pattern of making false statements and withholding information—only to issue a *mea culpa* when finally confronted with the truth. This discovery misconduct should be remedied through the entry of default against MRS. In the alternative, Plaintiff requests that this Court deem certain disputed facts as true.

1

**Relevant Background**

Plaintiff alleges that MRS violated the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"), by calling her at least 19 times in an attempt to collect a debt, even after it received a cease and desist letter from her. *See* Doc. 46-1, ¶ 9. MRS admits to receiving her cease-and-desist letter and contends that it has no record of having ever called Plaintiff's cell phone number. *See* Doc. 48; Doc. 48-6. But MRS has provided no proof of ever searching for the called number (Plaintiff's number), it has only stated it searched and found nothing.[1] Plaintiff has asked for this information, but has not received it. *See* Exhibit "A."

**A.    MRS denied that (877) 553-3114 belonged to it, until Plaintiff asked it to sign an affidavit.**

After Plaintiff filed its complaint, MRS's counsel attempted to persuade Plaintiff, by and through attorney Alex Weisberg, to withdraw her complaint on the grounds that (877) 553-3114 belonged to some other organization. *See* Doc. 15-6 at 2. When confronted with a statement from one of MRS's customer service representatives that (877) 553-3114 did belong to MRS, MRS's counsel again stated that MRS's Quality Assurance Manager William Perkins ("Mr. Perkins") told her that the representative must be mistaken. *See* Doc. 15-7 at 2-4. Plaintiff's counsel then asked MRS's counsel for an affidavit, which MRS's counsel stated "made [Mr. Perkins] nervous." *Id.* Only then MRS's counsel acknowledge that (877) 553-3114 was one of MRS's debt collection numbers. *Id.*

---

[1] For example, MRS produced an email from its Dialer Group closing "Ticket #35724" because it could not find Plaintiff's number. MRS has not produced, however, a copy of the ticket itself. Nor has MRS produced a printout or screenshot showing that its system does not find results when searching for Plaintiff's telephone number.

**B.      MRS served Sprint with a subpoena on September 26, 2012.**

On September 26, 2012, MRS served a subpoena to Sprint Nextel Corporation ("Sprint") to obtain Plaintiff's telephone records during the relevant period.[2] *See* Exhibit "B." Sprint responded to MRS via email on October 11, 2012. *See* Exhibit "C."

Plaintiff served MRS with requests for production, including Request No. 8 for "All documents that contain Plaintiff's name, address, telephone number, account number, or any other information which is personally identifiable to Plaintiff." *See* Exhibit "D." In addition, on October 19, 2012, Plaintiff requested a copy of Sprint's subpoena response. *See* Exhibit "E."

On November 26, 2012, MRS responded to Plaintiff's request for production no. 8, stating, "Subject to the foregoing General Objections, Defendant responds to Request No. 8 by stating that it does not have any responsive documents in its possession, custody, or control other besides [sic] the telephone records provided by Virgin Mobile, Sprint PCS Wireless." *See* Exhibit "F." In conjunction with its response, MRS provided two documents it received from Sprint, representing that this was all it received from Sprint. *See* Doc. 52-2.

**C.      MRS served Sprint with another subpoena on November 21, 2012.**

On November 21, 2012, MRS served a second subpoena to Sprint to obtain additional information regarding Plaintiff's account and certain telephone numbers (708-829-9964, 708-829-9900, 708-829-9931, 708-829-9936, 708-829-9875, 708-829-9958) that appeared in the "DIALED_DIGITS" column on the Sprint records produced in response to the first subpoena. *See* Exhibit "G." MRS did not disclose any information related to this subpoena, and when Plaintiff inquired about the status of this subpoena, MRS initially denied having received anything. *See* Exhibit "H." MRS then stated that it received only an objection letter to its

---

[2] Because Plaintiff uses a Virgin Mobile pay-as-you-go phone, she does not have any cell phone records in the form of a monthly billing statement. *See* Exhibit "L" ("As Virgin Mobile accounts are prepaid, no bill reprints are available").

subpoena. *See* Exhibit "I." After Plaintiff confronted MRS about Sprint's Subpoena Compliance team's differing version of the truth, MRS's counsel again denying receiving anything. *See* Exhibit "J." The next day, and the day on which the parties' joint pretrial order was due, MRS admitted that it had received additional documents. *See* Exhibit "K."

**D.     This Court denied Plaintiff's motion for summary judgment on her TCPA claims because of unexplained discrepancies in Sprint's call records.**

The Court denied Plaintiff's motion for summary judgment on her TCPA claims, in part, because "the alleged calls do not all match up," noting that the call records from Sprint "only show five calls made from MRS's number to Holt's cell phone number." Doc. 57 at 5-6. The other 14 calls occurred during a gap in the records from October 6, 2011 to January 15, 2012—a gap which Plaintiff struggled to explain. *See* Doc. 52 at 4.

The Court further noted that the Sprint call records "list the original number dialed as being different than Holt's number." *Id*. at 7 The Court held that this, combined with MRS's claim that it never called Plaintiff, supported "the reasonable inference that the five documented calls to Holt could have been routed to her cell phone through a different number, **i.e., the number originally dialed that was not a TLDN**." *Id*. (emphasis added).

**E.     MRS withheld one of the documents it received from Sprint in response to its September 26, 2012 subpoena that explained the gap in the records.**

On January 7, 2014, Plaintiff learned that Sprint's Subpoena Compliance department produced—not two—but *three* documents in response to MRS's first supboena. *See* Exhibit "C." The third document was a cover letter that Sprint sent in conjunction with its response. *See* Exhibit "L." The cover letter stated, "**Please be advised: Call detail reports for Sprint CDMA during the time frame of 10-6-11 through 1-14-12 may have been affected by a storage related issue.**" *Id*. at 2 (emphasis added).

4

**F.   MRS received—but did not produce—a response to its November 21, 2012 subpoena showing additional calls and explaining that the unexplained numbers were Sprint's TLDNs.**

On December 10, 2012, Sprint responded to MRS's second subpoena. *See* Exhibit "K" at 3. These records contained partially recovered data from the previously missing time frame showing four additional calls placed in the month of October 2011. *See* Exhibit "M" at 8-11.

Sprint also included a cover letter which stated, with regard to the unexplained "dialed digits" 708-829-9964, 708-829-9900, 708-829-9931, 708-829-9936, 708-829-9875, 708-829-9958 that, "[n]o records were found for these numbers, as **our search results indicate they are Temporary Local Dialing Numbers (TLDN)**. TLDN's are routing, or bridge, numbers used only by the switch to complete calls and are not assigned to customers." *See* Exhibit "N" (emphasis added).

In addition, Sprint mailed a certified copy of this information on March 1, 2013, which MRS never produced or filed. *See* Declaration; Exhibit "O."

**G.   Plaintiff can no longer obtain her phone records via traditional subpoena method, because records are only retained for 18 months.**

In response to Plaintiff's December 5, 2013 subpoena to Sprint, Sprint informed Plaintiff that Sprint only retains records for Virgin Mobile accounts for 18 months, meaning it is now impossible to obtain a complete record for the relevant time frame. *See* Exhibit "L" ("We are able to provide call records for Virgin Mobile accounts for approximately the most recent 18 month period from the date of processing.").

Sprint has informed Plaintiff that there is a way to recover call details from a tape backup system operated by a third-party company, but that this process is estimated to cost $3,400 and may take up to six months to process. *See* Exhibit "P." Moreover, there is no guarantee that the tape backup will contain a comprehensive record. *Id.*

**Legal Standard**

Under Rule 37(d), the Court may sanction a party for failing to disclose information in response to an interrogatory or a request for production. Fed. R. Civ. P. 37(d)(1)(A)(ii). The sanctions available under Rule 37(d) are the same as those available under 37(b)(2)(A)(i)–(vii). *See* Fed.R.Civ.P. 37(d)(3); *Ari Officer v. Duran*, No. 12-C-10195, 2014 WL 51330, at *3 (N.D. Ill. 2014). "[T]he entry of a dismissal or default judgment under Rule 37 requires a showing of 'willfulness, bad faith, or fault' on the part of a non-complying party." *Hindmon v. Natl.-Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 620 (7th Cir. 1982). "The district courts have 'wide latitude in fashioning appropriate sanctions.' " *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011) (citing *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir.1999)). The district court's choice of sanction will only be overturned upon a showing of abuse of discretion. *See Hindmon*, 677 F.2d at 620.

**Argument**

**A. MRS's failure to disclose the Sprint records is sanctionable under Rule 37.**

This Court should sanction MRS for withholding Sprint's subpoena responses. The October 11, 2012 cover letter would have informed Plaintiff—and the Court—that a known Sprint "stored related issue" caused the gap in the phone records from October 6, 2011 to January 14, 2012. The December 10, 2012 response to Sprint's second subpoena would have revealed additional calls and explained that the "dialed digits" were not the telephone numbers for other debtors being "routed" to Plaintiff's phone, but were in fact Sprint's Temporary Local Dialing Numbers, as Plaintiff argued in her motion for summary judgment.

MRS had an obligation under the Federal Rules to provide complete disclosure of the records requested. By producing two of the three documents from October 11, 2012 in response, MRS conceded that the information Sprint produced in response to its subpoenas was responsive

to Plaintiff's Request for Production no. 8. MRS had a continuing obligation to supplement its discovery responses, yet it failed to do so. Since MRS produced nothing other than Sprint's records, it unquestionably was aware of its duty to produce any information it received in response to the second subpoena. It failed to do so.

MRS's conduct is sanctionable. The Court dedicated a substantial amount of time comparing the call lists—as Plaintiff did—searching for an explanation, and relied on the lack of consistency in denying Plaintiff's motion for summary judgment. MRS's failure to produce this information, which would have avoided this wasted effort, must be deterred.

**B.     This Court should enter default judgment against MRS as a sanction for withholding key evidence in this case.**

MRS has opened itself up to the most severe sanctions available by withholding key evidence in this case. The Seventh Circuit has "held that the penalty must be proportionate to the wrong." *Ridge Chrysler Jeep, LLC v. DaimlerChrysler Fin. Services Americas LLC*, 516 F.3d 623, 626 (7th Cir. 2008). "Default judgment is appropriate where a lesser sanction under the circumstances would unfairly minimize the seriousness of the misconduct and fail to sufficiently deter such misconduct by others in the future." *Rosenthal Collins Group, LLC v. Trading Technologies Intern., Inc.*, 05 C 4088, 2011 WL 722467, at *6 (N.D. Ill. 2011).

    **1.     MRS's conduct threatens the legitimacy of civil litigation.**

"The judicial system is premised on the honest, good faith efforts of the parties involved." *Domanus v. Lewicki*, 288 F.R.D. 416, 419 (N.D. Ill. 2013). "Where honesty is replaced with falsehood, a party's right to litigate comes into question." *Id*. "Our legal system is dependent on the willingness of the litigants to allow an honest and true airing of the real facts." *Quela v. Payco-Gen. Am. Creditas, Inc.*, 99 C 1904, 2000 WL 656681, at *7 (N.D. Ill. 2000).

**2. This Court must not permit MRS to continue litigating this case after withholding evidence, relying on the lack of evidence, and then only disclosing it after being caught.**

MRS "seriously violated the 'rules of the game', and [it] can't be permitted to say 'oops, you've caught me', and thereafter be allowed to continue to play the game." *Dotson v. Bravo*, 202 F.R.D. 559, 573 (N.D. Ill. 2001) *aff'd*, 321 F.3d 663 (7th Cir. 2003). MRS relied on the gap in the Sprint records and the "dialed digit" discrepancy in its motion practice, without revealing to the Court or Plaintiff the true reasons for these factual disputes. Indeed, the inconsistencies in the call records have been a crucial part of its defense. Only after Plaintiff confronted MRS with Sprint's contradictory information did MRS finally disclose what it had received. MRS must not be allowed to resume litigating this case, having obfuscated for nearly a year and a half.

**3. MRS may plead inadvertence, but its conduct in this case suggests that it acted intentionally.**

MRS will argue that its conduct was unintentional. But its repeated failures to disclose and misstatements, taken together, suggest a pattern of bad faith. Indeed, each document that it claims to have unintentionally withheld hurts its case.

MRS has explained to Plaintiff that it was simply unaware of the contents of the October 11, 2012 cover letter. MRS has asked Plaintiff to believe it was merely a coincidence that the *one* document that MRS did not provide is one that explains a discrepancy upon which MRS relied in defending against summary judgment.

MRS also explained that after opening the Excel spreadsheet it received from Sprint on December 10, 2012, it believed that Sprint's response to the second subpoena was merely a reproduction of the same information it received in response to the first subpoena. And for this reason, it never opened the December 10, 2012 cover letter sent. The Court should view this claim with skepticism. First, these records contained nearly one hundred additional telephone

calls in the missing gap from October 2011 to January 2012. The majority of the alleged calls occurred during this period, so one would expect MRS to have examined this period closely.

Second, even if the Court is willing to believe that MRS did not read the sentence about the missing call records in the October 11, 2012 cover letter, it seems very hard to believe that it wouldn't have even *opened* the December 10, 2012 cover letter. MRS's second subpoena sought substantially more information than its first subpoena, *including records for six other telephone numbers*. So even if MRS hadn't noticed the additional one hundred calls in the spreadsheet, it must have been curious about the rest of Sprint's response. MRS was interested enough to serve its second subpoena in two months hoping to find answers about Plaintiff's mysterious records, yet MRS didn't bother to read the accompanying cover letter? Plaintiff finds this explanation is illogical and believes the Court will agree.

Finally, MRS requested a certified copy of these records—which Sprint sent on March 1, 2013, and which MRS admits to receiving. Yet, MRS did not file these certified records with the Court in opposing Plaintiff's motion for summary judgment; instead, it relied on the uncertified documents it received from the original subpoena. *See* Doc. 48-2. Perhaps it was then that MRS discovered that the records in response to the second subpoena contained additional calls and chose not to use them. Plaintiff asks the Court to recall that this litigation began with MRS's adamant denial that (877) 553-3114 was even one of their numbers, only admitting the truth when asked to sign a sworn affidavit (i.e., invoking the penalty of perjury). And MRS has defended this case based on its claim that no record of Plaintiff's telephone number exists in its system, yet has never provided any proof of having actually searched for Plaintiff's number. Given MRS's lack of credibility, this Court should deny MRS the opportunity to continue litigating its case based on its denial of the existence of internal records.

**C.  In the alternative, this Court should deem that MRS placed each call alleged, including the 12 calls for which Plaintiff now cannot obtain records.**

In the alternative to issuing the most severe sanction, Plaintiff asks this Court to deem certain facts as admitted. First, the Court should deem that MRS placed all of the calls that appear on Plaintiff's cell phone record.[3] Second, the Court should deem that the 12 calls Plaintiff alleges occurred during this period did, in fact, occur.

**1.  This Court and Plaintiff wasted substantial time ruling on, and arguing, the motion for summary judgment without being made aware of the fact that Sprint had acknowledged that the unexplained numbers were TLDNs.**

Had MRS disclosed Sprint's response on December 10, 2012, Plaintiff—and more importantly, the Court—would not have wasted time researching, litigating, or ruling on the "dialed digit" discrepancy. While Plaintiff and the Court were trying to understand the meaning of Sprint's records, MRS knew that these numbers were TLDNs belonging to Sprint, not consumers, and that it was therefore inconceivable that MRS would have dialed those numbers in an attempt to reach different debtors. It would be unfair to allow MRS to attempt to establish some new theory before the jury, having possessed dispositive evidence for over a year that its original theory was without merit. Thus, to the extent that this Court permits MRS to defend this case at all, it should be deemed that the calls in the Sprint records were placed by MRS to Plaintiff's cell phone.

**2.  Because of MRS's failure to disclose the Sprint records, Plaintiff is now unable to obtain a complete call history for the missing period.**

Had MRS produced this information at the time it received it, Plaintiff would have been on notice that the information was missing as a result of Sprint's technical error. Plaintiff might have been able to obtain a full version of the records by contacting Sprint's Subpoena

---

[3] MRS has offered to stipulate not to argue that the calls were "routed" by any party other than Sprint. *See* Exhibit "K" at 2. Plaintiff considers this to be insufficient, because it leaves open the possibility that MRS will attempt to continue to cast doubt on whether MRS *placed* the calls.

Compliance department before the 18 month period (ending in June 2013) had lapsed. Indeed, Plaintiff has now learned that MRS's second subpoena yielded nearly an additional month of calls. Even if those calls were not recoverable through normal means, Plaintiff would have at least had sufficient time to request a search of Sprint's tape backup system. Now, having discovered this information just before trial, Plaintiff simply does not have time to obtain the records.

This sanction would be rather mild, but would likely not deter such misconduct in the future. The partial records show that, in addition to the five calls already in the records, Plaintiff's alleged calls were indeed placed on the dates and times that she claimed. As MRS has relied on a *lack* of records for its defense and Plaintiff's records have proven reliable, it is entirely fair to deem that the twelve other calls took place.

**Conclusion**

MRS has frustrated this litigation by withholding evidence that it was required to disclose under Rule 37. Its pattern of behavior suggests that this conduct was intentional. Given that MRS's entire defense is based on a claim that *other* evidence does not exist, this Court should not allow it to continue litigating. Instead, this Court should enter default judgment against it. In the alternative, Plaintiff requests that it be deemed that MRS, in fact, placed all of the calls in the Sprint records, and those in Plaintiff's handwritten notes, to her cell phone. This Court should not allow MRS to profit from its failure to disclose key evidence.

Respectfully submitted on January 22, 2014.

> By: s/ Marshall Meyers
> Marshall Meyers
> WEISBERG & MEYERS, LLC
> ATTORNEYS FOR PLAINTIFF
> 5025 N. Central Ave., #602
> Phoenix, AZ 85012
> (602) 445-9819
> (866) 565-1327 fax
> mmeyers@AttorneysForConsumers.com

**CERTIFICATE OF FILING**

      I certify that on January 22, 2014, I electronically filed the foregoing Motion with the clerk of the U.S. District Court using the electronic case filing system of the court, which will send notice of electronic filing to all counsel of record.

                                                          By: s/ Marshall Meyers
                                                             Marshall Meyers