UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

-------------------------------------------------X

MICHELLE HOLT,                                 :
                                               :    Civil Action No. : 1:12-CV-02571
                         Plaintiff,            :
-against-                                       :
                                               :
                                               :
                                               :
MRS BPO, LLC.,                                 :
                                               :
                         Defendant.            :
                                               :
                                               :
-------------------------------------------------X

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION PURSUANT TO FRCP 37 FOR DEFAULT JUDGMENT OR, IN THE ALTERNATIVE, TO DEEM FACTS AS TRUE

Defendant, by and through its attorneys, submits this Opposition to Plaintiff's motion pursuant to Rule 37 for a default judgment or, in the alternative, to deem facts as true.

## PRELIMINARY STATEMENT

To begin, Defendant's counsel apologizes to Plaintiff's counsel and this Court for its inadvertent non-production of three documents which had been sent to Defendant's counsel by Sprint in response to two subpoenas (the "First Subpoena" and the "Second Subpoena"). The non-production was caused by two careless mistakes made by a young associate, John Brigandi, which, unfortunately, was not caught by the supervising partner, Cindy Salvo. It was not done to "hide" any evidence, nor has it caused any prejudice to Plaintiff that cannot be readily remedied

at trial. Indeed, Defendant has already offered to stipulate to facts which would remedy any possible prejudice.

The three documents which were not produced were: (1) a cover letter from Sprint, attaching telephone records for Plaintiff's cellular telephone (the "First Cover Letter"); (2) a second cover letter from Sprint, attaching amended telephone records for Plaintiff's cellular telephone (the "Second Cover Letter"); and (3) the amended telephone records themselves (the "Amended Telephone Records").

The First Cover Letter contained important information. It stated that the original telephone records (the "Telephone Records"), which were attached thereto, may have been affected by a "storage related issue." Ms. Salvo received the First Cover Letter, the Telephone Records, and a document called a "Key to Understanding CDMA Call Detail Reports (the "Key"), in an e-mail from Sprint on October 11, 2012, in response to the First Subpoena, which sought telephone records for 773-540-4760 ("Plaintiff's Number"). Ms. Salvo did not review the documents, but, instead, forwarded the e-mail to her associate, John Brigandi. She asked Mr. Brigandi to review the documents and send a copy of the documents to Plaintiff's counsel. Mr. Brigandi did not do so immediately but, rather, e-mailed the Telephone Records and the Key to Plaintiff's counsel at the same time that he produced Defendant's Responses to Plaintiff's Interrogatories and Responses to Requests for Production of Documents the following month. He inadvertently did not include the First Cover Letter in that production. Mr. Brigandi does not know how or why this omission took place, but feels it was likely him being careless and simply forgetting about the First Cover Letter He had never reviewed the First Cover Letter with care, dismissing it as a non-substantive "cover letter." Since its receipt, he had reviewed the

2

Telephone Records and the Key many times, but had never looked at the First Cover Letter again. This likely led to its omission from production.

Then, on or about December 10, 2012, Sprint sent Ms. Salvo another e-mail, which she also forwarded to Mr. Brigandi. (Ms. Salvo did not know, at that point, that Mr. Brigandi had failed to produce the First Cover Letter to Plaintiff). This e-mail attached the Second Cover Letter, the Amended Telephone Records and the Key. Ms. Salvo asked Mr. Brigandi if these documents were responsive to the Second Subpoena. Mr. Brigandi opened the Amended Telephone Records and saw that, at the top of all pages, it stated "Call Records for PTN 773-540-4760." This is the same heading that was at the top of each page of the Telephone Records. Because the Second Subpoena did not seek records concerning that telephone number (which was Plaintiff's Number), but, rather, sought records and monthly telephone bills for other telephone numbers. Mr. Brigandi knew that the Amended Telephone Records were not responsive to the Second Subpoena. Rather, he believed it was a duplicate of the documents sent in response to the First Subpoena, and he so informed Ms. Salvo. Based on this belief, Mr. Brigandi did not open the remaining documents, and did not send a copy of them to Plaintiff's counsel. This was another careless, but unintentional, error by Mr. Brigandi.

Of the three documents that were not produced to Plaintiff, only one -- the First Cover Letter -- may have caused prejudice to Plaintiff, but it is prejudice that can be remedied at trial.

The potential prejudice is this: If Plaintiff's counsel had known about the "storage related issue" that was mentioned in the First Cover Letter, they could have asked Sprint to order "back up tapes," which may[1] have resulted in the discovery of more calls that corroborate the

---

[1] Plaintiff acknowledges in her motion, however, that "there is no guarantee that the tape backup [would have] contain[ed] a comprehensive record."

nineteen calls which Plaintiff claims were made to her by Defendant (collectively, the "Nineteen Calls"). (The Telephone Records corroborated a total of five calls, the Amended Telephone Records corroborated a total of seven calls).

Because of this possible prejudice, Ms. Salvo assured Plaintiff's counsel, Marshall Meyers, that she would not argue at trial that the Amended Telephone Records were evidence that the calls had not been made because they were not listed in that document. And, of course, the jury would be informed of the "storage related issue." Ms. Salvo even stated that perhaps she could stipulate that all of the Nineteen Calls were listed in the Amended Telephone Records, and asked to discuss this with Mr. Meyers.

Mr. Meyers refused -- insisting that Defendant must stipulate that it, in fact, placed all Nineteen Calls to Plaintiff, or Plaintiff would file a sanctions motion seeking a default judgment. But Defendant would not acquiesce to Mr. Meyers's demand as such a stipulation would be inequitable. Plaintiff's best-case scenario, if Mr. Brigandi had properly produced the First Cover Letter, would have been to get evidence from Sprint that all Nineteen Calls were listed in Sprint's records. This would not be incontrovertible evidence that all Nineteen Calls were, in fact, placed by Defendant because Defendant has no evidence of ever having made these calls. In addition, MRS's telephone system cannot physically dial a number without making a record of it.[2] The determination that "all calls were made by MRS" is one that would have to be made, or not made, by a jury, not via an inequitable stipulation.

---

[2] In addition, in light of the fact that Plaintiff and her family have brought twenty lawsuits against debt collectors in the last five years, and have sent false and misleading letters to both MRS and at least one other debt collector, perhaps Plaintiff has figured out a way to forward calls to Plaintiff's Number that is not reflected in the Amended Telephone Records. See Defendant's arguments regarding this in the Joint Pretrial Order.

Plaintiff was not prejudiced by not receiving the Second Cover Letter as it contains nothing more than a variation of the information in the Key which was produced to Plaintiff's counsel in November 2012. Indeed, Plaintiff used the information in the Key in support of her motion for partial summary judgment as to the Telephone Consumer Protection Act ("TCPA") claim. The Court held, in denying summary judgment, that "the fact that Holt has provided a plausible explanation does not mean it is the only explanation." Indeed, the Court made clear that there were too many issues of material fact to grant summary judgment for either side. Thus, Plaintiff would not have been awarded summary judgment even if she had had copies of the unproduced documents in her possession at that time.

Plaintiff was also not prejudiced by not receiving the Amended Telephone Records back in December 2012 because it has these records now. Furthermore, Defendant has agreed to enter into a stipulation regarding the Amended Telephone Records, to ameliorate any possible prejudice.

--- --- ---

Defendant's counsel, Cindy Salvo, has been an attorney for seventeen (17) years. She has never had a sanctions motion filed against her, nor ever had any disciplinary issues whatsoever.[3] Mr. Brigandi, admitted in 2008, has also never had any sanctions motions filed against him, or any disciplinary issues.[4] The non-production here was completely inadvertent and was the result of mistakes by Mr. Brigandi that he deeply regrets. Ms. Salvo also regrets not double-checking that Mr. Brigandi had produced all documents to Plaintiff. However, Ms. Salvo

---

[3] See Declaration of Cindy D. Salvo ("Salvo Decl."), ¶36.

[4] See Declaration of John E. Brigandi ("Brigandi Decl."), ¶14.

had never before had a problem with Mr. Brigandi in connection with the production of documents.[5]

Case law in the Seventh Circuit, and elsewhere, is clear that a default judgment is an extreme and draconian sanction that should be reserved for cases where egregious discovery abuse was the result of willful or grossly negligent behavior, and this egregious abuse must be proven by clear and convincing evidence.

The U.S. Supreme Court held, in a much-cited opinion, <u>Societe Internationale v. Rogers</u>, 357 U.S. 197, 209 (1958), that to chose default as a sanction for Rule 37 abuse would be to deprive that party of their Fifth Amendment right to a due process of law. Here, Defendant has many defenses to what it believes is a non-meritorious case. None of the documents that were inadvertently withheld have any bearing on these defenses. Defendant simply wants to present its case to a jury. It should be allowed to do so.

Defendant, thus, respectfully requests that Plaintiff's motion for a default judgment be denied. In addition, Defendant asks that Plaintiff's alternative relief -- that Defendant must stipulate that it placed all Nineteen Calls to Plaintiff - be denied as well. An appropriate stipulation should be entered by the Court, if it believes such a stipulation is warranted.

## STATEMENT OF FACTS

At the beginning of this litigation, Defendant's Quality Assurance Director, William Michael Perkins, informed MRS's counsel, Cindy Salvo, that MRS had been unable to locate any calls made to Plaintiff's cell phone number, 773-540-4760 ("Plaintiff's Number"). (<u>See</u> Declaration of William Michael Perkins ("Perkins Decl."), ¶2; <u>see</u> <u>also</u> Declaration of Cindy D.

---

[5] Salvo Decl., ¶37.

Salvo, Esq. ("Salvo Decl."), ¶2). In addition, he said that the telephone number that Plaintiff alleged belonged to MRS, 877-553-3114, did not, in fact, belong to MRS. For these reasons, Mr. Perkins believed that Plaintiff was suing the wrong entity. (Id.)

Ms. Salvo informed Defendant's counsel, Alex Weisberg, of what Mr. Perkins had stated. (Salvo Decl., ¶3). Mr. Weisberg asked if Mr. Perkins would be willing to sign an Affidavit attesting to the fact that 877-553-3114 did not belong to MRS. (Id.) Ms. Salvo asked Mr. Perkins if he would sign such an Affidavit. (Salvo Decl. at ¶4; Perkins Decl., ¶3). He said yes, he would, but Ms. Salvo then asked him if he was *100% certain* of what he was going to attest to. (Id.) Mr. Perkins said that he was almost that certain, but wanted to check one or two other things before he would feel comfortable signing an Affidavit. (Id.) Subsequently, Mr. Perkins found that while he was still not able to find Plaintiff's Number in MRS's call log, the 877-553-3114 number had, in fact, once been an MRS telephone number. (Perkins Decl., ¶4; Salvo Decl., ¶5). Ms. Salvo immediately informed Mr. Weisberg of Mr. Perkins's updated information, and the litigation continued. (Salvo Decl. at ¶5).

Ms. Salvo has represented MRS for over three years, handling virtually all of its FDCPA litigation nationwide. (Id. at ¶6). In all that time, Ms. Salvo can recall only two times that MRS stated, when threatened with a lawsuit, that a calling telephone number did not belong to them. (Id.) (In those cases, MRS was proven correct). (Id.)

A. **The First Subpoena to Sprint**

On or about September 26, 2012, Defendant's counsel served a subpoena on Sprint, seeking the telephone records for Plaintiff's Number for the time period August 1, 2011 through September 26, 2012 (the "First Subpoena"). (Id. at ¶7; see also Declaration of John E. Brigandi, Esq. ("Brigandi Decl."), ¶2).

On October 11, 2012, Ms. Salvo received an e-mail from Sprint, attaching three documents. Ms. Salvo immediately forwarded the e-mail to her associate, John Brigandi. (Salvo Decl. at ¶8, Exh. A; Brigandi Decl., ¶3). She did not open any of the attachments, but asked Mr. Brigandi to review them and send a copy to Plaintiff's counsel. (Id. at ¶9; Brigandi Decl., ¶3). Mr. Brigandi was going to be taking the depositions of Plaintiff and her sister, Kimberly Holt, and so he wanted to review and analyze the telephone records in preparation for these depositions. (Brigandi Decl., ¶3).

The documents attached to the e-mail were an Excel spreadsheet containing a list of calls to Plaintiff's Number (the "Telephone Records"), a document called a "Key to Understanding CDMA Call Detail Reports (the "Key"), and a cover letter from Sprint (the "First Cover Letter"). (Id. at ¶4).

Subsequently, Mr. Brigandi began an in-depth review of the Telephone Records. (Salvo Decl., ¶10; Brigandi Decl., ¶5). The Telephone Records were found to have listed five (5) of the Nineteen Calls. (Id.) This was baffling to MRS, as MRS has no record of ever having called Plaintiff's Number. (Salvo Decl., ¶10).

The Telephone Records contained a column called "Called Number" and a column called "Dialed Digits." (Salvo Decl., ¶11). It also had a column which stated whether the call was "Inbound" "Outbound" "Routed" or "Undetermined." (Id.) Virtually all of the calls listed as having been made by MRS to Plaintiff contained the notation that they had been "Routed," and the "Dialed Digits" were different than the "Called Number." (Id.)

The Key explained some of the terms in the Telephone Records. Specifically, the Key provided, *inter alia*, as follows:

> Called number: This column reflects the number actually called. In most cases, this number will be the same as the number in the "Dialed Digits" column. If the

number has been forwarded, or if there is a routing number, then this will be reflected.

Dialed digits: This column reflects the digits that the caller enters into the keypad of the phone.

Routed calls come in two main varieties. The first are also known as "Temporary Local Directory Number (TLDN). They may be considered to be bridge/router numbers to complete a call. The second is when a call is not answered, but is routed to voicemail.

(Id., ¶12, Exh. B).

Based upon the fact that: (1) MRS had no record of ever having called Plaintiff's Number; (2) its telephone systems cannot physically place a call without recording that telephone number in its call log; (3) the Telephone Records suggested that calls had been routed to Plaintiff's Number, and not directly dialed by the caller (e.g., the "Dialed Digits" were different than the "Called Number"); and (4) Plaintiff and her family have brought twenty lawsuits against debt collectors in the past five years, Defendant's counsel believed that Plaintiff must have somehow routed the calls herself for the purpose of filing this lawsuit. (Id. at ¶13). While the Key did talk about the fact that calls are routed by Sprint through "Temporary Local Directory Numbers," Defendant's counsel believed that the definition of "Dialed Digits" meant that no one from MRS had actually dialed Plaintiff's Number. (Id.)

On November 26, 2012, Mr. Brigandi served Plaintiff's counsel, Alex Weisberg, by e-mail, with copies of Defendant's Responses to Plaintiff's Interrogatories, Defendant's Responses to Plaintiff's Request for Production of Documents, the Telephone Records and the Key. (Brigandi Decl. at ¶6). Unfortunately, Mr. Brigandi inadvertently did not produce the First Cover Letter. (Id.)

Mr. Brigandi has tried to recall exactly what happened, and why the First Cover Letter was not sent to Mr. Weisberg, but this incident was over a year ago and he cannot remember.

(Id. at ¶7; Salvo Decl., ¶15). He believes that he likely just forgot about the document. He does not believe that he gave more than a cursory glance at the First Cover Letter when he first saw it, dismissing it as non-substantive. (Id.) Indeed, the First Cover Letter starts out as does any standard cover letter, stating that "Pursuant to the above-referenced case, I am enclosing records for the requested time period associated with the following . . . . Call Report is enclosed." The one thing Mr. Brigandi is certain of is, not forwarding the First Cover Letter was not a deliberate attempt to "hide" this document. (Id.)

Unfortunately, as it turned out, the First Cover Letter did contain more important information than do most cover letters. It stated that "Call detail reports for Sprint CDMA during the time frame of 10-6-11 through 1-14-12 may have been affected by a storage related issue." (Salvo Decl., ¶16).

### B.    The Second Subpoena to Sprint

On or about November 21, 2011, Defendant's counsel sent a second subpoena to Sprint (the "Second Subpoena"). (Brigandi Decl. at ¶8; Salvo Decl., ¶17). In the Second Subpoena, Defendant sought telephone records for the telephone numbers listed in the "Dialed Digits" column, as well as actual monthly telephone bills for Plaintiff and her sister, Kimberly. (Id.) Mr. Brigandi sent Plaintiff's counsel a copy of the Second Subpoena. (Id., Exh. A).

On December 10, 2012, Sprint sent an e-mail to Ms. Salvo. (Salvo Decl., ¶18). The e-mail had three attachments: an Excel spreadsheet, a Key and a cover letter (the "Second Cover Letter"). Ms. Salvo immediately forwarded the e-mail to Mr. Brigandi. (Id., Exh. C). She did not open the attachments herself. (Id.)

Ms. Salvo, later that day, asked Mr. Brigandi what documents Sprint had provided in response to the Second Subpoena. (Id. at ¶19; Brigandi Decl., ¶9). Mr. Brigandi opened the

Excel spreadsheet and saw a document (the "Amended Telephone Records") that appeared identical to the Telephone Records already sent by Sprint. (Brigandi Decl., ¶9). At the top of every page of the Amended Telephone Records it stated, "Call Records for PTN 773-540-4760"; that is, Plaintiff's Number. This is identical to what was at the top of the Telephone Records. (Id.)

Mr. Brigandi scrolled to the bottom of the Amended Telephone Records and saw that it was the only document produced. (Id. at ¶10). There were no monthly telephone bills for Plaintiff or her sister, nor anything related to the Dialed Digits numbers. (Id.) Mr. Brigandi informed Ms. Salvo that what Sprint had sent was just a duplicate of what had already been sent by Sprint. (Id.) Because Mr. Brigandi had never carefully reviewed the First Cover Letter, he was unaware of any "storage related issue," and so had no reason to believe that the Amended Telephone Records included calls that were not provided in the Telephone Records. (Id.)

Because Mr. Brigandi believed it was a duplicate of what had already been sent, and not a response to the Second Subpoena, he did not open the two other documents attached to the e-mail, nor send this "duplicate" to Plaintiff's counsel. (Id. at ¶11).

In fact, Ms. Salvo much later discovered the Amended Telephone Records contained some calls that had not been in the Telephone Records. (Salvo Decl., ¶20). Specifically, it contained two calls -- on October 13, 2011 and October 19, 2011 -- which were on the list of the Nineteen Calls. (Id.) The Amended Telephone Records also included two additional calls -- on October 11, 2011 and October 21, 2011 -- which had never been alleged by Plaintiff. (Id.)

C.    **Summary Judgment Motions**

In or about April 2013, Plaintiff moved for partial summary judgment in connection with her Telephone Consumer Protection Act ("TCPA") claim. In or about May 2013, Defendant

moved for partial summary judgment in connection with Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim.

The Court denied both motions, holding that there were too many issues of material fact to support summary disposition.

### D.     Plaintiff's Subpoena to Sprint

On December 5, 2013, Plaintiff's counsel, David McDevitt, sent an e-mail to Ms. Salvo attaching a subpoena they were sending to Sprint ("Plaintiff's Subpoena") which asked for, *inter alia*, "all files delivered to the Salvo Law Firm." (Id. at ¶23). Ms. Salvo wondered why he was doing this, and reminded him that discovery was long over. (Id.)

In response, Ms. Salvo received an e-mail from Plaintiff's counsel, Marshall Meyers. Mr. Meyers stated that, although discovery was over, "extraordinary circumstances" applied because Mr. Meyers had called Sprint and it had indicated to him that there had been a storage related issue in connection with the Telephone Records. (Id. at ¶24). Mr. Meyers said he was asking Sprint for a copy of what Sprint had sent Defendant's counsel because the Telephone Records had been produced on an Excel spreadsheet and was, thus, capable of "easy editing" by Defendant's counsel. (Id.)

That same day, Ms. Salvo replied to Mr. Meyers' e-mail. (Id. at ¶25). She stated that she was "perplexed" by what he had told her, and she did not know anything about a storage related issue. (Id.) However, if, indeed, there was a storage issue, Ms. Salvo stated that "I believe you are correct that in the 'interest of justice,' these [amended] telephone records would have to come in if Sprint sends them." (Id., Exh. D).

On or about January 7, 2014, Sprint apparently responded to Plaintiff's Subpoena by sending telephone records to Plaintiff's counsel which were identical to the Amended Telephone

Records which had already been sent to Defendant's counsel by e-mail on December 10, 2012. (Id. at ¶26).

Later that day, Mr. Meyers asked Ms. Salvo to forward him the actual e-mail she had received from Sprint on October 11, 2012, so he could compare the Telephone Records which had been produced by Mr. Brigandi in discovery with the telephone records that had been produced to Defendant by Sprint in October 2012. (Id. at ¶27). Ms. Salvo forwarded him the Sprint e-mail from Oct. 11, 2012. (Id.) The Telephone Records attached to that e-mail were identical to what Mr. Brigandi had produced to Plaintiff's counsel. (Id.) Thus, there had been no "editing" by Defendant's counsel. (Id.) However, Plaintiff's counsel later informed Ms. Salvo that the October 11, 2012 e-mail also attached the First Cover Letter which had never been produced by Defendant. (Id.)

Ms. Salvo immediately looked at the October 11, 2012 e-mail and opened up the documents attached thereto. (Id. at ¶28). She read the First Cover Letter which stated that the Telephone Records may have been affected by a storage related issue. (Id.) She was very distressed and spoke to Mr. Brigandi about how this mistake had happened. (Id.)

Ms. Salvo apologized to Plaintiff's counsel and stated that she would stipulate to whatever was fair under the circumstances. (Id. at ¶29). She suggested that, at trial, she would not argue that the Nineteen Calls were not corroborated by the Amended Telephone Records, and the jury, of course, would be told of the storage related issue. (Id.) Ms. Salvo even suggested that perhaps Defendant could stipulate that the Nineteen Calls were all listed in the Amended Telephone Records. (Id.)

Mr. Meyers insisted that the only stipulation he would accept was if Defendant stipulated that it had actually placed all Nineteen Calls to Plaintiff. (Id. at ¶30). Mr. Meyers stated that, if

Defendant did not so stipulate, he was going to file a motion for sanctions, seeking a default judgment. (Id.) Defendant's counsel believed the stipulation he was asking for was inequitable because it would not allow MRS to present evidence that: (1) there is no record of MRS's ever having called Plaintiff's Number, and (2) it is impossible for MRS's telephone systems to dial a number without recording it in Defendant's call log. (Id.)

On or about January 9, 2014, Plaintiff's counsel, David McDevitt, sent Ms. Salvo an e-mail asking if we had ever received anything from Sprint in response to the Second Subpoena. (Id. at ¶31). Ms. Salvo responded that "no, Sprint/Virgin Mobile never sent us any of these documents." (Id.) Ms. Salvo honestly believed this to be the case. (Id.) Mr. Brigandi had informed her that they never received any documents in response to the Second Subpoena, just a duplicate of the response to the First Subpoena. (Id.)

Then, as Mr. McDevitt described in Plaintiff's motion, he "confronted" Ms. Salvo with a "differing version of the truth," stating that they had spoken to Sprint and that Sprint said it had sent Defendant's counsel an e-mail on December 10, 2012 in response to the Second Subpoena, and that it had also mailed certified copies of the Amended Telephone Records to the Salvo Law Firm. (Id. at ¶32). Ms. Salvo responded and said, again that the firm had never received documents in response to the Second Subpoena. (Id.) She also stated that she could not find a December 10th e-mail from Sprint but thought that the certified copies were mailed by Sprint in (perhaps) March. (She was wrong). (Id.)

The next day, Ms. Salvo spoke to Mr. Brigandi when he came into the office. (Id. at ¶33; Brigandi Decl., ¶12). Mr. Brigandi reminded her that Sprint did send a December 10, 2012 e-mail to Ms. Salvo because Ms. Salvo had then forwarded it to him, and that that e-mail had attached a "duplicate" of the Telephone Records. (Id.) Mr. Brigandi also said he did not

remember seeing any mail from Sprint which included certified copies of documents. (Id.) The firm's paralegal/secretary, Laura DeCotiis, also did not remember seeing any documents that had been mailed by Sprint.[6] (See Declaration of Laura DeCotiis ("DeCotiis Decl."), ¶¶2-7).

Ms. Salvo sent an e-mail to Mr. Meyers, explaining as follows:

> After you told me yesterday that Sprint claimed to have sent a response to the second subpoena, I asked John [Brigandi] this morning about it. He told me that he remembered me forwarding him a second e-mail from Sprint, but that it was definitely not documents in response to the second subpoena. We clicked open the other attachments today and saw that the [Second] cover letter contained other information including the fact that the routed telephone numbers were only bridge numbers. This is what the Key also states, and it is the argument that you made in your motion for summary judgment. . . .

> As I mentioned to David [McDevitt] . . . I would be willing to represent to you that we will not raise an argument that the Sprint telephone records provide any evidence that the calls to Michelle's cell phone were routed. As for the issue concerning the "storage problem," I am not certain if we can agree on a stipulation or of if you will need to file your motion [for sanctions]. But we should discuss.

(Salvo Decl., ¶34, Exh. E).

Mr. Meyers would not discuss the issue of stipulation any further with Ms. Salvo. (Id. at 35).

---

[6] After looking at the Second Cover Letter, Ms. Salvo realized why the law firm may not have received mail from Sprint. Sprint was still using the firm's old Fairfield, New Jersey address, and not the new West Caldwell, New Jersey address. The firm moved in mid-February 2013 and the letter from Sprint was apparently mailed to the old address on March 1, 2013. This was during a time period when the firm was not getting mail reliably forwarded from the old office address.

## LEGAL ARGUMENT

## I.

## DEFENDANT'S COUNSEL'S NON-PRODUCTION OF DOCUMENTS WAS INADVERTENT AND CARELESS AND DOES NOT WARRANT THE IMPOSITION OF THE DRACONIAN SANCTION OF DEFAULT JUDGMENT

"[W]hen considering the extreme sanction of dismissing a case with prejudice [or a default judgment], the Court is mindful of the admonition that such a step 'must be infrequently resorted to by district courts.'" Grubb v. Board of Trustees of the University of Illinois, 730 F.Supp.2d 860, 864 (N.D.Ill.,2010) (citing Schilling v. Walworth County Park and Planning Commission, 805 F.2d 272, 275 (7th Cir.1986).

"Although Rule 37 permits a variety of sanctions to effectuate one or more of its purposes, the most severe sanction is the entry of a default judgment. The case law interpreting Rule 37 has established, however, that the sanction of default (or its equivalent, dismissal) is reserved only for the most egregious violations of the discovery process. In particular, the United States Supreme Court has cautioned that 'there are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of [the] cause.'" Danis v. USN Communications, Inc., 2000 WL 1694325, *33 (N.D. Ill. Oct. 20, 2000). (citing Societe Internationale, 357 U.S. 197, 209 (1958). These "constitutional limitations" are derived from the Fifth Amendment's guarantee that "no person shall be deprived of property without due process of law." Id.

"The Seventh Circuit requires that any sanctions rendered be proportionate to the offending conduct, and that the harsh sanction of default be reserved for extreme circumstances." Northington v. H&M Intern., 2011 WL 663055, *13 (N.D. Ill. Jan. 12, 2011). "The purposes for sanctions do not support the entry of a default judgment -- which deprives parties of a trial on the

16

merits -- when there is at least some evidence that allows the plaintiff to prove the case and where there are less drastic remedies available to cure the absence of certain evidence . . ." Id.

Moreover, before a default judgment can be entered as a Rule 37 sanction, there must be clear and convincing evidence of "willfulness, bad faith or fault." The Seventh Circuit held, in Maynard v. Nygren, 332 F.3d 462, 468 (7th Cir. 2003), that "considering the severe and punitive nature of dismissal as a discovery sanction, a court must have clear and convincing evidence of willfulness, bad faith or fault before dismissing a case." The Maynard Court cited Shepherd v. American Broadcasting Companies, Inc., 62 F.3d 1469, 1476, (D.C. Cir. 1995), noting that "the 'social disutility' of granting a trial on the merits to a party guilty of litigation misconduct is less than the social disutility of denying a trial to a party innocent of such misconduct. Put another way, it is better to risk permitting a 'guilty' ABC to defend this case than to risk denying an 'innocent' ABC its day in court." See also JFB Hart Coatings, Inc. v. AM General, LLC, 764 F. Supp.2d 974, 986 (N.D. Ill. 2011) ("The standard of proof for sanctions is 'clear and convincing' evidence"); Ty, Inc. v. Softbelly's, Inc., 517 F.3d 494, 498-499 (7th Cir. 2008) (imposing a sanction pursuant to Rule 37, or the court's inherent power, requires proof by clear and convincing evidence); Plunk v. Village of Elwood, Ill, 2009 WL 1444436, *12 (N.D. Ill. May 20, 2009) ("A default judgment requires clear and convincing evidence of misconduct"); Larson v. Bank One Corp., 2005 WL 4652509, *9 (N.D. Ill. Aug. 18, 2005) (for default judgment or dismissal with prejudice, "the Seventh Circuit has required 'clear and convincing' evidence").

"Fault," for this purpose, refers to a "party's 'extraordinarily' poor judgment or 'gross' negligence as opposed to a mere mistake or carelessness." Oyebade v. Boston Scientific Corp., 2012 WL 4020971, *3 (S.D. Ind. Sept. 12, 2012).

In <u>Oyebade</u>, the Court held that the plaintiff had: (1) destroyed a crucial audio recording and then denied that the recording ever existed; (2) falsely testified at his deposition that he "could not recall" whether he had ever gone out to sea when he was in the Navy; (3) refused to answer any other questions about his military service; (4) testified at his deposition that he "could not recall" whether he had ever run a side business; and (5) informed the Court that he had a notebook with 20-30 pages of notes but, when the Court ordered him to produce all the pages in the notebook, he produced only 9 pages and denied there were any more. Despite this flagrant and repeated discovery abuse, the Court did not dismiss plaintiff's claim but, rather, ameliorated the discovery abuse through the use of jury instructions, and by barring certain evidence at trial.

Here, the non-production of the First Cover Letter, the Amended Telephone Records and the Second Cover Letter was inadvertent and careless, but was not done willfully or in bad faith. It also does not rise to the level of "extraordinarily poor judgment" or "gross negligence." The behavior of Mr. Brigandi, a fourth year associate at The Salvo Law Firm at that time, was, at most, careless, and not contumacious.

Indeed, even in Plaintiff's own brief, she argues nothing more than that Defendant's conduct "suggests" it acted intentionally. That is far from meeting the burden of "clear and convincing" evidence required to impose a default judgment.

Accordingly, a default judgment would be an excessive and inequitable sanction. First, Defendant is entirely blameless here, and knew nothing about the Sprint Subpoenas or any documents produced (or not produced) in connection therewith. Cases wherein default judgments are entered as Rule 37 sanctions (including all cases cited by Plaintiff in purported support of her position), almost always relate to egregious discovery by litigants -- not

inadvertent mistakes made by attorneys. A default judgment would be harsh and draconian and would deprive Defendant of the due process of law. Defendant has strong defenses to this litigation,[7] including: (1) Plaintiff cannot show that any calls allegedly made to her by Defendant were in connection with a debt that was in default and was incurred primarily for consumer, family or household purposes (as she is unable to provide Defendant with the name of the debtor Defendant was allegedly calling)[8]; (2) Defendant has a valid bona fide error defense because any violation was unintentional and occurred despite the maintenance of procedures reasonably adapted to avoid this type of error; that is, the handling of cease and desist communications; (3) Plaintiff is unable to show that Defendant uses an automatic telephone dialing system of the type contemplated by the Telephone Consumer Protection Act ("TCPA") and (4) Defendant manually dials all calls to cellular telephone numbers and, therefore, would never have called Plaintiff's Number using an automated dialing system.[9] Defendant has offered to stipulate to certain facts in an effort to ameliorate any possible prejudice Defendant's non-production may have caused. No further sanction is warranted here.

---

[7] Plaintiff's statements regarding Defendant's lack of valid defenses is simply wrong. For example, Plaintiff states that "MRS has provided no proof of ever searching for the called number (Plaintiff's number), it has only stated it searched and found nothing." In fact, MRS produced a document blah blah.

[8] Plaintiff is unable to provide the name of who Defendant was allegedly calling despite the fact that she claims she received multiple voicemail messages from Defendant looking for this person.

[9] In addition, Defendant feels that Plaintiff may be perpetrating some type of "scam" against Defendant in light of the fact that her and her family have filed twenty lawsuits against debt collectors in the last five years, and Plaintiff sent identical false and misleading letters to both MRS and another debt collector in connection with filed litigation. There are many "scams" perpetrated by consumers against debt collectors, as discussed in connection with Plaintiff's Objection to the introduction of this evidence in the Joint Pretrial Order.

## II.

## ANY PREJUDICE CAUSED BY THE NON-PRODUCTION OF DOCUMENTS CAN BE SATSIFACTORILY DEALT WITH AT TRIAL

In the instant motion, Plaintiff asserts prejudice in connection with MRS's failure to produce the First Cover Letter because the First Cover Letter mentioned the "storage related issue" with respect to some of the calls in the Telephone Record. Plaintiff states that if she had learned about the storage issue in November 2012, when the Telephone Records were produced by Defendant, Plaintiff "might have been able to obtain a full version of the records by contacting Sprint's Subpoena Compliance Department before the 18-month period[10] (ending in June 2013) had lapsed." Now, Plaintiff does not have time to request any additional information from Sprint.

This is a reasonable argument and one that Defendant's counsel sought to remedy immediately. Ms. Salvo informed Mr. Meyers that, because of Defendant's failure to produce the First Cover Letter, Defendant would stipulate that it would not raise an argument at trial that the Nineteen Calls were not corroborated by the Amended Telephone Records. Ms. Salvo also agreed to discuss other possible stipulations, including a stipulation that all Nineteen Calls were listed in the Amended Telephone Records.

Mr. Meyers would not agree to discuss this issue. Rather, he demanded that Defendant stipulate that all Nineteen Calls were, in fact, placed by MRS, or he would file a motion for sanctions seeking a default judgment. This was an unreasonable request because even if all

---

[10] Sprint apparently can only produce telephone records in response to a subpoena for the immediately preceding 18-month period. Records of call made prior to that have to be obtained from "back-up tapes" which are costly and take a long time to produce.

Nineteen Calls had been listed in the Amended Telephone Records, Defendant still was entitled to present evidence that its call logs did not show any calls to Plaintiff's Number.

As for the Second Cover Letter, it stated that the Dialed Digits' numbers were "Temporary Local Dialing Numbers ("TLDN") and that TLDN numbers are "routing or bridge" numbers. This is the same information that was found in the Key, which was produced to Plaintiff's counsel back in November 2012. Indeed, Plaintiff used the Key to make an argument, in her Reply in Support of Plaintiff's Motion for Partial Summary Judgment, that the Nineteen Calls were not routed by Plaintiff, as follows:

> "Sprint's explanations [in the Key] make clear that 'undetermined' and 'routed_call' entries in the Sprint Records are just an artifact of the workings of Sprint's cellular network, as it makes use of temporary numbers to connect calls. . . . The presence of entries labeled "routed_call" simply means that Sprint has connected the call using a TLDN."

The Court, in its Memorandum of Opinion and Order, dated October 21, 2013, agreed that Plaintiff's TLDN argument "may explain the difference between the documented calls in the Sprint call records and the additional calls Holt claims she received from MRS. . . . [T]he fact that Holt has provided a plausible explanation does not mean it is the only explanation. However, a reasonable jury could also believe, for example, that some of the calls were never made or that the screen shots were taken of someone else's phone. In fact, MRS contends that it could not find any records in its system of manually-dialed or automatically-dialed calls to Holt's number." Thus, because the Court found there were too many issues of material fact, summary judgment would not have been granted to Plaintiff even if it had had the unproduced documents prior to that motion.

As for the Amended Telephone Records, they were not even worthy of "hiding." They corroborated two more of the Nineteen Calls; however, twelve of the calls remained uncorroborated.

## III.

## THE CASES CITED BY PLAINTIFF ARE DISTINGUISHABLE AND INAPPOSITE

Plaintiff cites a number of cases in purported support of her position that a default judgment should be entered here, but all are factually distinguishable and inapposite.

In Quela v. Payco-General American Credits, Inc., 2000 WL 656681 (N.D. Ill. May 18, 2000), the Court entered a default judgment against the defendant corporation for coercing an employee to give false deposition testimony and to sign a false witness statement. Because "coercing false testimony strikes at the heart of the judicial system," the Court believed that a default judgment was the appropriate remedy.

In Rosenthal Collins Group, LLC v. Trading Technologies Int'l, Inc., 2011 WL 722467 (N.D. Ill. Feb. 23, 2011), a default judgment was entered against plaintiff for: (1) turning back the clock on its computer to make it appear as though documents had been created earlier than they had; (2) intentionally wiping out all data on a computer disk prior to turning it over to defendant's counsel; (3) reformatting an IBM ThinkPad and reinstalling its operating system to hide documents; and (4) intentionally wiping out all data on a thumb drive.

The Court held that, in light of this egregious and repeated intentional discovery abuse, and the fact that plaintiff had been sanctioned by the Court earlier in the litigation for similar behavior, the Court entered a default judgment against plaintiff and dismissed its case with prejudice.

In <u>Ridge Chrysler Jeep, LLC v. Daimler Chrysler Financial Services Americas, LLC</u>, 516 F.3d 623 (7th Cir. 2008), plaintiffs, owners of two Chrysler dealerships, perjured themselves when they lied to the Court in an affidavit in order to improperly receive $500,000 in financing from Chrysler. "One who misuses litigation to obtain money to which he is not entitled is hardly in a position to insist that the court now proceed to address his legitimate claims." <u>Id.</u> at 626. In addition, the Court held that plaintiffs had engaged in other, unspecified "chicanery." As a result, the Court dismissed plaintiffs' claims with prejudice.

In <u>Dotson v. Bravo</u>, 202 F.R.D. 559 (N.D. Ill. 2001), the plaintiff, bringing a case for malicious prosecution against several police officers, perjured himself when he lied about his true identity throughout the proceedings in order to hide the fact that he had an extensive criminal record. In addition, plaintiff lied in his Responses to Interrogatories, and would not sign the Interrogatories until he was compelled to do so by the Court. Holding this behavior to be fraud upon the Court, it dismissed plaintiff's claim with prejudice. The Court noted that plaintiff's fraudulent behavior should be distinguished from "mere nondisclosure [which is] insufficient to establish fraud upon the court." <u>Id.</u> at 568, fn. 49.

In the instant matter, Defendant MRS did not engage in any misconduct whatsoever, unlike in the cases cited by Plaintiff. MRS had nothing to do with the non-production of documents. The fact that Mr. Perkins would not sign an Affidavit without making 100% certain that it was accurate shows his honesty -- a dishonest person would have signed the Affidavit even if he was not sure it was true.

In short, Defendant should not be deprived of the right to defend itself against Plaintiff's allegations.

As the Court noted in <u>Northington v. H&M Intern.</u>, 2011 WL 663055, *13 (N.D. Ill. Jan. 12, 2011), a default judgment should not be entered wherein there is "at least some evidence" that allows the plaintiff to prove his/her case. Here, Plaintiff has not been denied any evidence whatsoever, and an appropriate stipulation by Defendant would address any possible prejudice.

## CONCLUSION

For the foregoing reasons, Defendant MRS BPO, LLC respectfully requests that the Court deny Plaintiff's motion seeking a default judgment, and deny Plaintiff's alternative request for a stipulation that all Nineteen Calls were made by Defendant to Plaintiff.

DATED:  January 30, 2014

THE SALVO LAW FIRM, PC

By: s/ Cindy D. Salvo
     CINDY D. SALVO

185 Fairfield Avenue
Suite 3C/3D
West Caldwell, New Jersey 07006
(973) 226-2220

Attorneys for Defendant,
MRS BPO, LLC.

## CERTIFICATE OF FILING

I certify that on January 30, 2014, I electronically filed the foregoing motion with the Clerk of the U.S. District Court, using the electronic case filing system of the Court, which will send notice of electronic filing to all counsel of record.

By: _/s/ Cindy D. Salvo_
CINDY D. SALVO