UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CASE NO. 1:12-cv-02571

MICHELLE HOLT,

    Plaintiff,

v.

MRS BPO, L.L.C.,

    Defendant.

_____/

## PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S PROPOSED EXHIBIT 23 AND TESTIMONY FROM WILLIAM MICHAEL PERKINS REGARDING THE LACK OF BUSINESS RECORDS

On Thursday, April 10, 2014, MRS produced a legible copy of Exhibit D23. Plaintiff moves the Court for an order prohibiting Defendant MRS BPO, LLC ("MRS") from introducing Exhibit D23 at trial, as well as any testimony from its witness William Michael Perkins ("Mr. Perkins") regarding the search that Exhibit D23 purports to show.

Mr. Perkins' deposition shows that he does not know enough about MRS's record keeping practices to know whether Exhibit D23 shows an exhaustive search of outbound telephone calls made by, or on behalf of, MRS. He is therefore is not a qualified witness under Rule 803(6). Accordingly, the Court should preclude MRS from introducing Exhibit D23 and any testimony from Mr. Perkins regarding the search, because there is evidence that it does not accurately reflect all of the outbound call records MRS keeps in the normal course of business.

Plaintiff drafted and files this motion at the earliest possible moment given the belated disclosure to give MRS an opportunity to consider the issues and respond before trial.

**Background**

Though discovery closed in March 2013, on January 24, 2014, MRS produced an illegible screenshot of what purports to be an internal search of MRS's call logs. At the pretrial conference, the Court ruled that the document ("Exhibit D23") would not be admitted unless MRS could produce a legible copy and ordered that Plaintiff could depose Mr. Perkins about the document itself.[1]

On February 12, 2014, Plaintiff deposed Mr. Perkins regarding MRS's Exhibit D23. At the deposition, Plaintiff asked whether MRS planned to produce a legible copy of Exhibit D23, and Mr. Perkins stated he would provide it to MRS's counsel after the deposition. When MRS did not produce it, Plaintiff assumed that no production would occur.

Plaintiff again asked about the document at the March 27, 2014 status conference with the Court, where the Court reiterated that it would not permit an illegible copy of the document to be introduced into evidence. Two weeks later, and four days before trial, MRS finally produced a legible copy of Exhibit D23. Plaintiff drafted and filed this motion as quickly as possible, given that she is currently preparing for trial on Monday.

**Legal Standard**

Rule 803(7) provides an exception from the hearsay rule where a party seeks to introduce "[e]vidence that a matter is not included in a record [admissible under Rule 803(6)] if: (A) the evidence is admitted to prove that the matter did not occur or exist; (B) a record was regularly kept for a matter of that kind; and (C) neither the possible source of the information nor other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(7). "It is apparent from the

---

[1] The Court also ruled that Exhibit D22 was illegible and permitted Plaintiff to depose Mr. Perkins regarding that document. MRS has not produced a legible copy of this document. Plaintiff reserves the right to object to MRS's attempt to introduce any such copy, should it be produced before or at trial.

language of Rule 803(7) that the 'absence of entry' rule may only be invoked where the record from which the entry is absent is one 'kept in accordance with the provisions of paragraph (6)' of Rule 803." *Brodersen v. Sioux Valley Meml. Hosp.*, 902 F. Supp. 931, 953 (N.D. Iowa 1995).

### Argument

I.  **Exhibit D23 constitutes hearsay evidence.**

A computer screenshot of a business record is hearsay when it makes an assertion of fact and the party is introducing it for the purpose of proving that fact. *See McKinney v. Haller*, 1:09-C-V1343, 2010 WL 4853306, at *3 (E.D. Va. 2010); *Summit Elec. Supply Co., Inc. v. Intl. Bus. Machines Corp.*, 1:07-CV-0431 MCA/DJS, 2009 WL 9087259, at *10 (D.N.M. 2009) ("[t]he screenshot is an out-of-court statement offered to prove the truth of the matter asserted, and therefore it is hearsay."). "For the purposes of Rule 803(6), it is immaterial that the business record is maintained in a computer rather than in company books." *Sea-Land Serv., Inc. v. Lozen Intern., LLC.*, 285 F.3d 808, 819 (9th Cir. 2002) (citation omitted).

Exhibit D23 is a computer screenshot of the results of an internal search performed using a Microsoft Access search tool ("the Search Tool"). Mr. Perkins purports this is a search of *every* outbound call MRS has *ever* made to *any* telephone number. The screenshot shows Plaintiff's cell phone number in the search field and contains the assertion, "0 Records Found." *See* Doc. 73-2 at 2.  MRS seeks to introduce this as evidence that, when running a search against the entirety of its call records for Plaintiff's cell phone number, there are no records found. Therefore, MRS must satisfy the requirements of Rule 803(6) and 803(7).

II. **Mr. Perkins doesn't know what the Search Tool searches.**

Mr. Perkins is not a qualified witness under the business records exception because he does not know enough about MRS's record keeping practices to show that the hearsay statement in Exhibit D23 is reliable.  To introduce hearsay under Rule 803(6), MRS must offer testimony

3

from a *qualified* witness that *any* record of a call MRS made to Plaintiff's cell phone would be kept in the regular course of business activity within the database or databases that Exhibit D23 searches. Only then does the assertion, "0 Records Found" become sufficiently reliable to introduce as evidence.

Mr. Perkins' deposition testimony reveals, however, that he does not know what databases or fields are being searched in Exhibit D23. Notably, Mr. Perkins admitted that MRS's Dialer Group uses some other, more comprehensive method of searching for calls that draws from some separate database. And, he testified that MRS uses a third-party service to initiate calls on its behalf. But his testimony reveals that he does not actually understand how the third-party service's call records would be reflected in the results of the Search Tool.

  **1. MRS has three in-house collection systems.**

Mr. Perkins testified at his deposition that MRS has three different collection systems—the DAKCS system, Ontario Workstation, and Beyond. *See* Transcript (attached hereto as Exhibit "A") at 8:23-9:1, 18:22-19:9. MRS has "slowly been migrating information" from DAKCS and Ontario Workstation to the Beyond collection system. *Id*. The Ontario Workstation alone has five separate "subsystems" and "information from four of those has been migrated over" to Beyond. *Id*. at 43:4-6.

  **2. Mr. Perkins does not know what the Search Tool is searching within those in-house collection systems.**

Mr. Perkins testified that the Search Tool searches the three in-house collection systems, but he does not know what fields it searches. Mr. Perkins testified that some of the telephone fields in MRS's collection system can be edited. *Id*. at 79:5-6. When Plaintiff asked Mr. Perkins whether the Search Tool could search the "edit tracking screen"—a field that tracks changes to account information and which cannot be edited—Mr. Perkins responded, "Exactly which

4

screens it's looking at, I don't know. That would be a programming question. That would be beyond me. I know that it looks in the DAKCS. Where exactly it's looking, I don't know." *Id*. at 79:17-24.

This shortcoming is significant, because this means Mr. Perkins does not know to what body of records the "0 Results Found" pertains. Mr. Perkins claims he has performed other searches, but this is the only search for which MRS produced *documentary* evidence. *Id*. at 84:11-23. Without competent testimony about what the Search Tool does, Exhibit D23's assertion cannot be shown to be reliable, and this documentary evidence should not be admitted.

> **3. MRS's Dialer Group searches a different database than Mr. Perkins searched.**

What's more, Mr. Perkins admitted that MRS has a Dialer Group that also performs searches—which are apparently more sophisticated—when it must "double-check" the searches that Mr. Perkins' Quality Assurance team performs. *Id*. at 82:22. The Search Tool does not use "the exact same database" as the MRS's Dialer Group uses for its searches. *Id*. at 83:21-25.

Mr. Perkins claims that their results have "consistently matched" the Dialer Groups' searches. *Id*. at 82:25-83:1. But the admission that the Dialer Group searches a different database to perform some sort of deeper search begs the question: why is this necessary if the Search Tool searches *all* of MRS's records? Indeed, this seems to be an admission that the Search Tool is *not* a comprehensive search of *all* of MRS's records.

And, Mr. Perkins admits he is not qualified to testify about the Dialer Group's searches, as he testified, "I don't know where they look or how they look. I just know that they look." *Id*. at 85:21-22.

  **4.**  **Mr. Perkins' testimony shows that he has no understanding of the relationship between the Search Tool, MRS's in-house collection systems, and any third-party dialing services that MRS uses.**

  Finally, Plaintiff asked Mr. Perkins whether there are "any external databases that have phone numbers in them." *Id*. at 80:25-81:1. Mr. Perkins responded, "I don't know that there are or are not…I don't know how the search tool is done. I just know that the search tool is done." *Id*. at 81:7-11. He concluded, "I'm afraid I can't speak with any – I can't speak to that. I don't know the answer." *Id*. at 81:12-13.

  Mr. Perkins later admitted that MRS uses a third-party vendor to place calls on its behalf. But his testimony, at best, shows that he is uncertain about how records of those calls would be reflected in the Search Tool. Specifically, Mr. Perkins stated:

> Am I aware that they could have placed the call on MRS's behalf, yes. But *my understanding* is that they do not place the calls unless and until MRS provides the numbers to be called. That's why the phone numbers come from the MRS files. And that's why they're searchable through our records.

*Id*. at 95:23-96:8 (emphasis added).

  In other words, if a third-party vendor were placing the autodialed calls to Plaintiff on MRS's behalf, Mr. Perkins would *expect* to find Plaintiff's number somewhere in the in-house system using the Search Tool. But Mr. Perkins could not state this with certainty—only that it was his "understanding."

  Mr. Perkins' explanation essentially concedes that the Search Tool does not search calls made by third-party vendors. So, the assertion, "0 Results Found" is not reliable evidence that MRS never placed any calls to Plaintiff's number. It is not clear what it indicates, because "[w]here exactly it's looking" in MRS's business records, "[Mr. Perkins] do[es]n't know." *Id*. at 79:17-24.

6

**III.     Mr. Perkins' positive experiences with the Search Tool does not compensate for his inability to explain how it works, given his other statements that suggest it is not a comprehensive search of MRS's records.**

To be sure, Mr. Perkins stated that in "[e]very search that [has had] done, [he has] always been able to come up with the phone numbers." *Id*. at 82:12-15. But Mr. Perkins' opinion that he has been successfully using the Search Tool in the past does not compensate for the fact that he does not know *what* the Search Tool is searching.

While the Court might be justified in forgiving Mr. Perkins' lack of complete knowledge about MRS's record keeping in a situation where the business record *actually exists*, it should scrutinize testimony about the *lack* of a computer record more closely. After all, Rule 803(7) places additional requirements on the party seeking to introduce the evidence, both requiring a showing under Rule 803(6) and 803(7). *See Brodersen v. Sioux Valley Meml. Hosp.*, 902 F. Supp. at 953.

To introduce evidence about the non-existence of a record, MRS must also prove that "a record was regularly kept for a matter *of that kind*." Fed. R. Evid. 803(7)(B) (emphasis added). Mr. Perkins cannot competently testify that records of *all* calls, of all kinds, were regularly kept within whatever "pool" of information the Search Tool is drawing from. He has admitted that the Dialer Group searches some other database when MRS needs to conduct a more comprehensive search of its records. And he has demonstrated a lack of understanding about how the Search Tool and third-party call records interact. At the very least, the evidence "indicate[s] a lack of trustworthiness" of the validity of information. Fed. R. Evid. 803(7)(C).

**Conclusion**

Mr. Perkins' lack of knowledge about the Search Tool makes him unqualified under FRE 803(6) to lay the necessary foundation to introduce Exhibit D23. Simply put, Mr. Perkins cannot testify about the significance of the Search Tool's result of "0 Records Found" if he does not

7

know the universe of records being searched. To permit MRS to introduce the screenshot of the search or testimony about the Search Tool, when it has no qualified witness to explain what the search means, is improper under the rules of evidence and unfair to Plaintiff. MRS could have designated a member of its Dialer Team to testify about its internal search process. Instead, it designated a witness with only a rudimentary understanding of how its computer systems work. Because this issue is at the center of the case, the Court should not allow MRS to present this untrustworthy information.

Respectfully submitted on April 12, 2014.

By: s/ Marshall Meyers
Marshall Meyers
WEISBERG & MEYERS, LLC
ATTORNEYS FOR PLAINTIFF
5025 N. Central Ave., #602
Phoenix, AZ 85012
(602) 445-9819
(866) 565-1327 fax
mmeyers@AttorneysForConsumers.com

**CERTIFICATE OF FILING**

I certify that on April 12, 2014, I electronically filed the foregoing Motion with the clerk of the U.S. District Court using the electronic case filing system of the court, which will send notice of electronic filing to all counsel of record.

By: s/ Marshall Meyers
Marshall Meyers